HARRY WALTERMAN, Respondent, *v.* MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION, Appellant.

First Department, November 1, 1940.

*Albert Hirst* of counsel [*Abraham Friedman* with him on the brief; *Albert Hirst*, attorney], for the appellant.

*Carl Sherman* of counsel [*Rosalind Kramer* with him on the brief; *Sherman & Goldring*, attorneys], for the respondent.

UNTERMYER, J. On May 3, 1935, the defendant issued to the plaintiff a health and accident policy whereby it agreed to pay to him, as its insured, total disability benefits at the rate of $200 per month for life provided the disability " confines the insured continuously within doors and requires regular visits therein by a legally qualified physician " and at the rate of $100 per month for life for a " disability * * * which does not confine the insured continuously within doors, but requires regular medical attention."

The policy also contains these provisions:

" 4. Written notice of injury or of sickness on which claim may be based must be given to the Association within twenty days after the date of the accident causing such injury or within ten days after the commencement of disability from such sickness. In event of accidental death immediate notice thereof must be given to the Association.

" 5. Such notice given by or in behalf of the Insured or beneficiary, as the case may be, to the Association at Omaha, Nebraska, or to any authorized agent of the Association, with particulars sufficient to identify the Insured, shall be deemed to be notice to the Association. Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible."

The policy further provides:

" (b) Strict compliance on the part of the Insured and beneficiary with all the provisions and agreements of this policy, and the application signed by the Insured, is a condition precedent to recovery, and any failure in this respect shall forfeit to the Association all right to any indemnity."

The following indorsement appears on the policy:

" Monthly indemnities shall begin ninety days after the time originally fixed in the policy, the rates of indemnities and the length of time for which payable to continue as originally specified."

We interpret these provisions to mean that the insured was required to give written notice of total disability from sickness within ten days after such disability became known to him. We think the plaintiff's failure to comply prevents the enforcement of the policy.

The action is for benefits upon a claim of total disability caused by a brain disease contracted during the first year of the policy. The first symptoms of this ailment manifested themselves to the plaintiff in July, 1935, while driving his automobile in New England. He then experienced a sensation of dizziness accom-

panied by a smell of pepper and a momentary loss of consciousness. After returning to New York city the plaintiff resumed work, but early in August, 1935, he experienced a similar attack with the same sensations and loss of consciousness.

The plaintiff then consulted his family physician, who suggested that he consult a specialist in nervous disorders. About October 9, 1935, the plaintiff, then suffering from pains in the head, dizziness and occasional loss of consciousness, visited an eminent neurologist. Under his supervision he entered the New York Neurological Institute on October 15, 1935, where he remained until October 25, 1935. At the Neurological Institute an X-ray of his skull was taken and several tests were made to determine the possible existence of a brain tumor. Although the existence of a brain tumor was not conclusively determined, the neurologist concluded that the plaintiff was suffering from a serious ailment of the brain. Shortly after the plaintiff left the Neurological Institute, the neurologist reported the plaintiff's condition to his family physician. The family physician, called as a witness for the plaintiff, testified that shortly after October 25, 1935, he advised the plaintiff that he was not in condition " to do any sort of work," that he must liquidate his business and take a long vacation. The plaintiff acted on that advice and in the latter part of December, 1935, sold his interest in the business to his partners and ceased all work. Since then he has not engaged in any occupation and his condition has deteriorated progressively.

The question which is decisive of this appeal concerns the timeliness and effect of notice of disability given to the defendant. The plaintiff testified that he gave verbal notice to one Denzer, the soliciting broker, at the end of December, 1935, or early in January, 1936. The trial court correctly held that such notice to the broker was not adequate notice under the policy until communicated by him to the company. Denzer testified that he transmitted notice of disability to the company in April, 1936, although the defendant maintained that no written notice of the plaintiff's disability was received until about May 8, 1936, when the plaintiff sent the defendant the following communication:

" I regret very much to advise you that I have been forced to give up all work because of illness. My physicians advise me that the illness is of such a nature that a complete rest is absolutely essential.

" I would therefore request that you give this the necessary attention in accordance with the policy No. 680–4548."

Although this letter would appear to indicate that no previous notice of disability had been given to the company, it is not

necessary to determine whether written notice was given in April or in May, 1936, for in either event notice subsequent to January 10, 1936, did not, in our opinion, constitute compliance with the policy.

We recognize that by the terms of the policy the insured was not required to give notice of disability until that fact was manifest to him. (*MacKay* v. *Metropolitan Life Ins. Co.*, 281 N. Y. 42.) But from the present record it is clear beyond the possibility of contradiction that by the end of December, 1935, the plaintiff was aware of his total disability. At that time, acting on the advice of a qualified physician that he was incapacitated for work, he had recognized the existence of total disability by liquidating his interest in his business and preparing to go away. That advice was given after consultation between the plaintiff's family physician and a neurologist under whose direction the plaintiff had sojourned for ten days at the Neurological Institute. According to the plaintiff's testimony, he had then informed Denzer that he claimed benefits under the policy for total disability. That statement to Denzer, though insufficient as notice to the defendant, reveals the plaintiff's knowledge of his disability. Under these circumstances the plaintiff could not fail to be aware of the disability at least by the end of December, 1935. Regardless of the motives which may have influenced him, the failure to give notice until April or May of 1936 precludes recovery on the policy. (*Rushing* v. *Commercial Casualty Ins. Co.*, 251 N. Y. 302; *Whiteside* v. *North American Accident Ins. Co.*, 200 id. 320.)

The judgment should be reversed, with costs, and complaint dismissed, with costs.

MARTIN, P. J., and TOWNLEY, J., concur; O'MALLEY and GLENNON, JJ., dissent and vote to affirm.

Judgment reversed, with costs, and complaint dismissed, with costs.